# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 7 |
| DON KARL JURAVIN, | Case No. 6:18-bk-06821-KSJ |
| Debtor. | |
| _____ / | |
| | Adversary No.: 6:21-ap-00103-KSJ |
| BELLA COLLINA PROPERTY OWNER'S ASSOCIATION, INC., | |
| Plaintiff, | |
| vs | |
| DON KARL JURAVIN, | |
| Defendant. | |
| _____ / | |

## AMENDED COMPLAINT FOR REVOCATION OF DEBTOR'S DISCHARGE PURSUANT TO SECTION 727 OF THE BANKRUPTCY CODE

Creditor and Plaintiff, Bella Collina Property Owner's Association, Inc. ("Plaintiff" or "BCPOA"), by and through its undersigned counsel, files this amended complaint against Debtor and Defendant, Don Karl Juravin ("Debtor"), for the revocation of his discharge pursuant to 11 U.S.C. § 727 (d)(1)-(2) and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and 1334(b).

2. The venue of this proceeding is proper pursuant to 28 U. S. C. §1409.

3. This is a core proceeding pursuant to 28 U. S. C. §157(b)(2).

4. Plaintiff, as a creditor of Debtor, has standing to bring this action under 11 U. S. C. § 727(e)(1).

## GENERAL ALLEGATIONS

### Pre-Petition Findings

5. On September 24, 2014 the Federal Trade Commission ("FTC") filed a Complaint for Permanent Injunction and Other Equitable Relief, case no. 8:15-cv-02231, in the U.S. Middle District of Florida ("FTC Case") against the Debtor, Debtor's company Roca Labs, and George Whiting, alleging claims for deceptive trade practices under the Federal Trade Commission Act.

6. On February 19, 2016, the FTC amended its complaint to name Debtor's other companies, Must Cure Obesity Co. ("MCO"), Juravin, Incorporated ("JINC"), and Zero Calorie Labs, Inc. ("ZCL").

7. The District Court eventually ruled in the FTC's favor granting it equitable relief and a monetary judgment of $24,246,000.00 ("FTC Judgment") against the Debtor and his related entities.

8. Judge Mary Scriven of the District Court found Debtor **jointly and severally liable with Debtor's related entities (including MCO)** for **their** deceptive conduct because **they operated as a common enterprise under his ownership and control, with common officers, business functions, employees, office locations,** Debtor knew about the false and deceptive representations, he participated in the deceptive acts, **and he had authority to control[1] the related entities.**

---

[1] In support of the FTC's Motion for Temporary Restraining Order with Other Equitable Relief and an Order to Show Cause Why the Preliminary Injunction Should not be Modified (Doc. 69), the FTC attached a Declaration of a former employee of the Debtor, Jenna Antico, which stated that **Juravin would submit fraudulent vendor invoices to MCO, MCO would then pay said invoices, yet Juravin retained control of the money the entire time**. The aforementioned payments were mere formalities to conceal the reality that Juravin was in control of all entities, all the time, for his personal benefit and use.

9.       The FTC Judgment was later rendered non-dischargeable by this Court.

### Juravin Bankruptcy Case

10.      On or about October 31, 2018 ("Petition Date"), the Debtor filed his petition for relief under Chapter 7 of Title 11 of the United States Code.

11.      Plaintiff is a creditor of Debtor by virtue of a Claim of Lien, and Sanctions and Related Attorney Fees and Costs Order entered in the Circuit Court in and for Lake County, Florida as reflected in Plaintiff's Amended Proof of Claim filed February 14, 2020 date (claim number 6-2) in the amount of $401,111.70.

12.      On September 16, 2019, upon Debtor's motion, the Juravin bankruptcy case was converted to Chapter 11 from Chapter 7.

13.      On March 16, 2020, after sustaining all objections to confirmation of the Debtor's proposed Chapter 11 plan and finding that the Debtor "is unable to articulate any reasonable way to succeed in [the] Chapter 11 case," the Court re-converted the case back to Chapter 7.

14.      On June 26, 2020 the Court entered its discharge of Debtor pursuant to 11 U.S.C. §727 (the "Discharge").

15.      Pursuant to 11 U.S.C. §727(d)(1), the Court shall revoke the discharge granted under section 727(a) if "such discharge was obtained through the fraud of the Debtor, and the requesting party did not know of such fraud until after the granting of such discharge."

16.      Pursuant to 11 U.S.C. §727(d)(2), the Court shall revoke a discharge granted under section 727(a) if "the Debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee."

17. For the reasons set forth in more detail below, the Discharge should be revoked under 11 U.S.C. §§ 727(d)(1)-(2).

### Misrepresentations on the Debtor's Schedules and SOFA

18. On or about January 14, 2019 the Debtor filed his Schedules and Statement of Financial Affairs. On or about January 16, 2019, the Debtor filed his Amended Schedules and Statement of Financial Affairs ("SOFA") (Doc. 17).[2]

### Household Goods and Furnishings

19. In Schedule A/B, Part 3, Item 6, the Debtor listed the following items of household goods and furnishings: "5 beds and nightstands, 2 dressers, 1 glass table, 3 coffee tables, 2 dining tables and chairs, 1 end table, woven outdoor, outdoor set, 3 sofa sets, 1 sofa set outdoor, 2 book/china cases, pool table, massage chair, 2 washing machines, 2 dryers, 2 refrigerators, dishwasher, oven and other household goods."

20. Pursuant to the Order Granting Trustee's Motion Under Seal for Break Order to Take Possession of Debtor Property, entered on April 29, 2021 (Doc. 502) ("Break Order"), **almost one year after the discharge was entered**, the Trustee observed and the Debtor owns the following item missing from the above referenced property listed in Debtor's Schedule A/B, Part 3, Item 6:

   a. 1 Duke Baby Grand piano (valued by Trustee at One Thousand Five Hundred Dollars ($1,500.00))

### Electronics

21. In Schedule A/B Part 3, Item 7, the Debtor listed the following property under electronics: "TV: 2 x 55" + 1 projector and screen + 2 x 65"."

---

[2] Reference to Schedules and SOFA shall refer to the more recent, Amended Schedules and SOFA (Doc. 17).

22. Pursuant to the Break Order, the Trustee filed his Trustee's Inventory (Doc. 497-1), which included the following items owned by the Debtor but not listed by the Debtor on Schedule A/B, Part 3, Item 7:

   a. 6 Apple/MacBook laptop computers 15";

   b. 1 Apple/MacBook Pro Laptop computer 12";

   c. 1 Apple/MacBook computer 24";

   d. 1 Apple iPad 7";

   e. 1 Apple iPad 9";

   f. 1 Samsung Galaxy S9 cell phone in box;

   g. 1 LG cell phone – black;

   h. 1 LG cell phone – white;

   i. 2 Samsung Note tablets – 9";

   j. 1 SanDisk storage drive [attached to the Apple iMac computer 24";

   k. 1 iPad USB power adapter white;

   l. 1 Samsung USB power adapter white;

   m. 2 Apple/Mac power adapters white;

   n. 1 generic power adapter with one 1 cable; and

   o. 1 USB adapter white with black and white lighting cable.

### Jewelry

23. In Schedule A/B, Part 3, Item 12, the Debtor listed "miscellaneous" jewelry which he valued at Three Hundred Dollars ($300.00).

24. The Debtor, however, owns and the Trustee took into custody 3 Breitling watches which the Trustee is presently having appraised.

**Equipment for Sports and Hobbies**

25. In Debtor's schedules A/B, Part 3, Item 9, the Debtor answered "no" as to any equipment for sports and hobbies.

26. The Debtor, however, owns a foosball table, a ping pong table, and various items of fitness equipment located in the Debtor's home.

**Financial Assets**

27. In Schedule A/B, Part 4, the Debtor was asked to list any **"legal or equitable interests" in deposits of money** at checking, savings, or other financial accounts, certificates of deposit, and shares in credit unions, brokerage houses, and other similar institutions. The Debtor listed the following accounts:

| | | |
|---|---|---|
| Checking Account | **TD Bank** | $2,617.35 |
| Checking | **FL Community Bank** | $100.00 |
| Checking | **Transferwise** $1,929 plus 665 Euro (1 EUR = 1.1313 USD on 10/31/18 or $752.31) | $2,691.31 |
| Checking | **Ally Bank** | $510.06 |
| Checking | **Insight Credit Union** | $1,595.00 |
| Checking | **TD Ameritrade** | $3,180.81 |
| Brokerage | **TD Ameritrade** (account frozen by Court Order in the FTC litigation – see #10 on the SOFA) | $90,638.95 |
| Checking | **Bank of Ireland**   (EUROS) | $150.00 |
| Checking | **AIB** (EUROS) | $350.00 |

28. The Debtor, however, failed to list the following deposit sums in a Must Cure Obesity, Co. ("MCO") account that Debtor had "legal and equitable interests" in:

09/12/2018     $150,000.00          BB&T Checking Acct - 9341

| | | |
|---|---|---|
| 09/12/2018 | $50,000.00 | BB&T Checking Acct - 9341 |
| 09/14/2018 | $150,000.00 | BB&T Checking Acct - 9341 |
| 09/14/2018 | $50,000.00 | BB&T Checking Acct - 9341 |

29.     The Debtor, post-petition, also failed to disclose and list the following deposit sums for certain MCO accounts that Debtor had legal and equitable interests in:

| | | |
|---|---|---|
| 12/12/2018 | $72,200.00 | BB&T CC Acct - 4947 |
| 01/09/2019 | $150,000.00 | BB&T CC Acct - 4947 |
| 07/03/2019 | $350,050.00 | BB&T Checking Acct - 9341 |
| 10/31/2019 | $250,000.00 | BB&T Checking Acct - 9341 |
| 06/04/2020 | $100,000.00 | BB&T Checking Acct - 9341 |
| 10/01/2020 | $250,000.00 | BB&T Checking Acct - 9341 |

30.     Evidence of the deposited sums described above in paragraphs 28-29 was testified to and is set forth in the ledger produced by (now former) creditor Karan Arora, owner of Natural Vitamins Laboratory Corp. ("NVLC"), attached hereto as Exhibit "A."

31.     More specifically, at Mr. Arora's continued 2004 examination on June 23, 2021 (Doc. 525), Mr. Arora testified[3] at length about funds **his company, NVLC, retained / held on deposit for Debtor before and during the Debtor's bankruptcy, that were never disclosed by Debtor or Mr. Arora until June 23, 2021, after the discharge was entered**.

32.     Mr. Arora also testified and provided the ledger (attached as Exhibit "A") showing funds returned to MCO / the Debtor within one year prior to the Debtor's petition, and funds returned to the Debtor during the Bankruptcy. Mr. Arora testified that although MCO is identified as the depositor and the recipient of returned funds, **that designation is not entirely accurate and**

---

[3] The transcript of Mr. Arora's testimony will be provided to this Court either through discovery or upon Plaintiff's receipt of such.

**that funds belonged to the Debtor, individually**. Furthermore, Mr. Arora testified and provided documentary support showing that some of the funds returned to the Debtor was done so by sending funds to Debtor's wife's newly acquired company, United Medical Group International, Inc. ("UMGI"), **at Debtor's sole instruction and direction**.

33. Debtor had and continued to have legal and equitable interests in and full control over the MCO accounts and the funds therein.

## SOFA

34. In Debtor's Statement of Financial Affairs for individuals filing for bankruptcy, Part 8, Question 20, the Debtor was asked to disclose whether any financial accounts or instruments held in his name **or for his benefit** were closed, sold, moved, or transferred within one year before his bankruptcy filing.

35. The Debtor's response was there was an account at Fifth Third Bank with a balance of Three Hundred and Twenty-Seven Dollars ($327.00), closed, moved, or transferred on April 20, 2018 and that an account at Sun Trust with a balance of One Thousand Dollars ($1,000.00), was closed, moved, or transferred on July 9, 2018.

36. Upon information and belief, the Debtor, however, omitted the following:

a. An account of MCO at Fifth Third Bank which was closed in June of 2018, after the Debtor procured four cashier's checks totaling One Hundred and Forty-Four Thousand Seventy-Seven Dollars ($144,077.00); and

b. An undisclosed account at Mainstreet Bank, which was closed on September 4, 2018, after Debtor withdrew Thirty Thousand Nine Hundred Thirty-Nine and 20/100 ($39,939.20).

True and correct copies of the bank statements evidencing the above transactions described in paragraph 24(a)-(b) are set forth in Composite Exhibit "B" attached hereto.

### **COUNT I – REVOCATION OF DISCHARGE PURSUANT TO 11 U. S. C. §727(d)(1)**

37.     Plaintiff repeats and realleges the allegations contained in paragraphs 1-36 above, as if fully set forth herein.

38.     Prior to the Discharge, the Debtor intentionally misrepresented his Schedules and SOFA to fraudulently obtain his Discharge as described in detail in paragraphs 18-36 above.

39.     Debtor fraudulently held on deposit hundreds of thousands of dollars with NVLC, which Debtor had exclusive control over, directed, and purposefully concealed from Creditors and this Court. There is evidence that the Debtor directed funds from NVLC to MCO and other Debtor related entities. There is evidence that Debtor used MCO as a personal coffer freely transferring money in and out of MCO to himself, his wife, and to other companies – all for fraudulent purposes and personal gain. None of this was ever reported on Debtor's Schedules or SOFA, despite having direct legal and equitable interests in such, for purposes of concealment from the creditors, Trustee, and the Bankruptcy Court.

40.     If Debtor had legal and equitable interests in deposits of money, Debtor was obligated to list those deposits. Depositing money to a shell corporation, for which Debtor owns and uses as a personal bank account for Debtor's personal benefit in an attempt to avoid certain Bankruptcy reporting requirements and obtain a discharge – is fraud. This is reinforced because of previous orders from this Court discussing the commonality of Debtor's enterprises (including MCO), his exclusive control and authority over such, and Debtor's purposeful intent to deceive.

41. Furthermore, Debtor fraudulently failed to list tens of thousands of dollars of household goods and furnishings with the intent of concealing such from the Plaintiff, creditors, the Trustee, and this Court. This was done all in an attempt to fraudulently obtain a discharge.

42. The Plaintiff, while suspicious, had no actual knowledge of these fraudulent actions and omissions until **after** the Discharge was entered.

43. The Plaintiff had no knowledge of these fraudulent misrepresentations and omissions before the Discharge date for a few reasons. The first is that, **but for the Break Order** (entered **after** the Discharge **as a result of Debtor's discovery misdeeds towards the Trustee, an arm of this Court**), **Plaintiff would never have uncovered that Debtor fraudulently concealed household assets and financial assets.** This is because (i) Plaintiff would have no other way of accessing the Debtor's premises nor would it have any suspicion to do so up until the Discharge date, and (ii) it wasn't until the Debtor's multiple unreported computers were confiscated by the Trustee, that Plaintiff became aware of certain fraudulent transfers, purchases, and deposits.

44. Second, it wasn't until after certain proof of claim discrepancies from NVLC, Karan Arora, and the many continued 2004 examinations and objections to discovery by Juravin and others did Plaintiff have enough suspicion to actively participate in the 2004 examination of Karan Arora and others.

45. Mr. Arora's **continued** 2004 examination was difficult to schedule between 6-8 parties, like all of the 2004 examinations in the Bankruptcy Case, but it wasn't until this examination of Mr. Arora, **the date being after the Discharge was entered**, that Plaintiff became aware of the deposits being held on Debtor's behalf with NVLC.

46. **Prior to this *continued* 2004 examination, Plaintiff would have no reason to know of this fraudulent concealment by the Debtor because the Debtor (nor his wife) never revealed such prior to the Discharge.**

47. As a result and related thereto, the Debtor's discharge was obtained through the fraud of the Debtor.

48. The Debtor knew or had constructive knowledge of his fraudulent actions and omissions regarding his property and financial affairs.

49. Plaintiff was unaware of the Debtor's falsehoods and fraudulent actions/omissions at the time the discharge was granted on June 26, 2020.

50. Based upon the foregoing, Plaintiff seeks a declaration and determination that the Debtor's discharge should be revoked pursuant to 11 U.S.C. § 727(d)(1).

**COUNT II – REVOCATION OF DISCHARGE PURSUANT TO 11 U. S. C. § 727(d)(2)**

51. Plaintiff **repeats and realleges the allegations contained in paragraphs 1-36, 39-40 above, as if fully set forth herein**.

52. The fraudulent actions of the Debtor as described above include, but are not limited to (a) acquiring significant funds from NVLC that the Debtor had legal and equitable interests in as to the MCO BB&T account(s) identified in Exhibit "A" that is property of the estate, and (b) failing to report $39,939.20 from an MCO account at Mainstreet Bank, $144,077.00 from an MCO account at Fifth Third Bank, and withdrawing all of said funds for the benefit of Debtor and without notifying the trustee or creditors.

53. The Debtor knowingly and fraudulently failed to report the entitlement or acquisition to the above financial assets under the deceitful guise of the MCO corporate formality which, as explained *ad nauseum*, have been deemed fraudulent by this Court.

54. These fraudulent actions and omissions establish that the Debtor acquired property that is or otherwise would be property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the Trustee.

55. Based upon the foregoing, Plaintiff seeks a declaration and determination that the Debtor's discharge should be revoked pursuant to 11 U.S.C. § 727(d)(2).

WHEREFORE, Plaintiff seeks a judgement in its favor and against the Debtor, Don Karl Juravin, revoking the Debtor's discharge pursuant to 11 U. S. C. § 727 (d)(1)-(2), and for such other in further relief as this court deems just and proper.

DATED: December 3, 2021

Respectfully submitted,

*/s/ William C. Matthews*
**MICHAEL D. CROSBIE, ESQ.**
Florida Bar No.: 72575
mcrosbie@shutts.com
**WILLIAM C. MATTHEWS, ESQ.**
Florida Bar No.: 0112079
wmatthews@shutts.com
**SHUTTS & BOWEN LLP**
300 S. Orange Avenue, Suite 1600
Orlando, Florida 32801
407-423-3200; 407-425-8316 (f)
*Attorneys for Bella Collina Property Owner's Association, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 3, 2021 a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system which will serve all interested persons receiving electronic notice, including Debtor's counsel, Aldo G. Bartolone, Jr., Esq. (aldo@bartolonelaw.com).

                                           */s/ William C. Matthews*
                                           WILLIAM C. MATTHEWS, ESQ.

ORLDOCS 18776251 9